1   IRELL & MANELLA LLP
    Andra Barmash Greene (123931)
2   agreene@irell.com
    A. Matthew Ashley (198235)
3   mashley@irell.com
    840 Newport Center Drive, Suite 400
4   Newport Beach, California 92660-6324
    Telephone:   (949) 760-0991
5   Facsimile:   (949) 760-5200

6   Attorneys for Defendant

7

8               UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO

11  JULIAN MENA, TODD SCHREIBER, NATE )   Case No. 3:15-cv-00064-JST
    COOLIDGE, AND ERNESTO MEJIA        )
12  individually and on behalf of all others )   **DEFENDANT'S REPLY IN SUPPORT OF**
    similarly situated,                )   **MOTION TO STAY PENDING**
13                                      )   **ARBITRATION**
                                        )
14                      Plaintiffs,     )   [Filed Concurrently with: Declarations of A.
                                        )   Matthew Ashley and William Glad]
15          vs.                         )
                                        )   Date:   June 11, 2015
16  UBER TECHNOLOGIES, INC.,            )   Time:   2:00 p.m.
                                        )   Judge:  Hon. Jon S. Tigar
17                      Defendant.      )   Place   San Francisco Courthouse
                                        )           Courtroom 9, 19th Floor
18                                      )           450 Golden Gate Ave.
                                        )           San Francisco, CA 94102
19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

**Page**

I.     **INTRODUCTION** ...................................................................................1

II.    **THE ARBITRATOR SHOULD DECIDE ANY QUESTIONS OF ARBITRABILITY** ....................................................................................2

III.   **PLAINTIFFS ASSENTED TO THE ARBITRATION AGREEMENT** ....................3

       A.     **Plaintiffs Mena, Mejia, and Schreiber Had Inquiry Notice of the Terms** ..................................................................................................4

               1.     *The color and font size of the notice did not prevent Plaintiffs from seeing it.* ......................................................................5

               2.     *Plaintiffs' personal decision to "always" turn down the brightness on their phones does not exempt them from being bound by the Terms.* ....................................................................6

               3.     *The placement of the Terms was conspicuous.* ..........................7

               4.     *Uber's Terms are easily readable on a smartphone.* ...................9

               5.     *The fact that Uber could have given even more notice is irrelevant.* ...................................................................................9

       B.     **Plaintiff Coolidge Used Uber After Being Placed On Notice of Uber's Terms** ............................................................................10

IV.   **PLAINTIFFS ARE BOUND BY THE ARBITRATION AGREEMENT UNDER THEIR OWN IMPLIED CONTRACT THEORY** .......................................11

V.    **THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE** .................12

       A.     **The Arbitration Agreement Is Not Procedurally Unconscionable** ................13

       B.     **The Arbitration Agreement Is Not Substantively Unconscionable** ...................................................................................14

VI.   **CONCLUSION** .................................................................................15

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

<u>Cases</u>

4

*AT&T v. Concepcion,*
 131 S. Ct. 1740 (2011) ............................................................................. 12, 13

5

*Bennett v. United States Cycling Fed'n,*
 193 Cal. App. 3d 1485 (1987) ........................................................................ 6

6

7

*Bernal v. Sw. & Pac. Specialty Fin.*, Inc.,
 No. C 12-05797 SBA, 2014 WL 1868787 (N.D. Cal. May 7, 2014) ................................ 2

8

*Cairo, Inc. v. Crossmedia Servs., Inc.,*
 No. C 04-04825, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ........................................ 8

9

10

*Carnival Cruise Lines, Inc. v. Shute,*
 499 U.S. 585 (1991) ...................................................................................... 9

11

*Chavarria v. Ralphs Grocery Co.,*
 733 F.3d 916 (9th Cir. 2013) .......................................................................... 15

12

13

*Conservatorship of Link,*
 158 Cal. App. 3d 138 (1984) ........................................................................... 6

14

*Cover Four, L.L.C. v. Cardiac Sci. Corp.,*
 No. 3:07-CV-661-M, 2007 WL 4245486 (N.D. Tex. Dec. 3, 2007) .................................. 9

15

16

*Crawford v. Beachbody,*
 *LLC,* No. 14-cv-1583, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ................................ 4

17

*Crown Mortg. Co. v. Young,*
 371 Ill. Dec. 31 (Ill. Ct. App. 2013) ............................................................... 12

18

19

*Dollar Phone Corp. v. Dun & Bradstreet Corp.,*
 936 F. Supp. 2d 209 (E.D.N.Y. 2013) ............................................................... 10

20

*Fallo v. High-Tech Inst.,*
 559 F.3d 874 (8th Cir. 2009) ........................................................................... 2

21

22

*Fitz v. NCR,*
 118 Cal. App. 4th 702 (2004) ......................................................................... 14

23

*Fteja v. Facebook, Inc.,*
 841 F. Supp. 2d 829 (S.D.N.Y. 2012) ................................................................. 4

24

25

*Harper v. Lindsay Chevrolet Oldsmobile, LLC,*
 212 F. Supp. 2d 582 (E.D. Va. 2002) ............................................................. 9, 13

26

*Harper v. Ultimo,*
 113 Cal. App. 4th 1402 (2003) ....................................................................... 13

27

28

**Page(s)**

*Harris v. Las Vegas Sands L.L.C.*,
No. CV 12-10858 DMG FFMX, 2013 WL 5291142 (C.D. Cal. Aug. 16,
2013) .......................................................................................................................... 6

*In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*,
893 F. Supp. 2d 1058 (D. Nev. 2012) ...................................................................... 8

*Kinkel v. Cingular Wireless LLC*,
223 Ill. 2d 1 (2006) ................................................................................................ 12

*Lou v. MA Labs.*,
No. C. 12-05409-WHA 2013 WL 2156316 (N.D. Cal. May 17, 2013) .................. 13

*Macias v. Excel Bldg. Servs.*,
767 F. Supp. 2d 1002 (N.D. Cal. 2011 ................................................................... 15

*McCabe v. Dell, Inc.*,
No. CV 06-7811-RGK, 2007 WL 1434972 (C.D. Cal. Apr. 12, 2007) ............. 13, 14

*Mohebbi v. Khazen*,
No. 13-CV-03044-BLF, 2014 WL 6845477 (N.D. Cal. Dec. 4, 2014) .................... 7

*Moody v. Metal Supermarket Franchising Am. Inc.*,
No. C 13-5098 PJH, 2014 WL 988811 (N.D. Cal. Mar. 10, 2015) ......................... 3

*Newton v. American Debt Services*,
549 Fed. Appx. 692 (9th Cir. 2013) ....................................................................... 15

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) .........................................................................passim

*Nicosia v. Amazon.com, Inc.*,
No. 14-CV4513, 2015 WL 500180 (E.D.N.Y. Feb. 4, 2015) ................................. 4

*Nitsch v. DreamWorks Animation SKG Inc.*,
No. 14-CV-04062-LHK, 2015 WL 1886882 (N.D. Cal. Apr. 24, 2015) ................. 3

*Novak v. Overture Servs., Inc.*,
309 F. Supp. 2d 446 (E.D.N.Y. 2004) ..................................................................... 9

*Oracle America, Inc. v. Myriad Group A.G.*,
724 F.3d 1069 (9th Cir. 2013) ............................................................................. 2, 3

*Performance Plastering v. Richmond Am. Homes*,
153 Cal. App. 4th 659 (2007) ................................................................................ 11

*Philliben v. Uber*,
(Case 4:14-cv-05615) ..................................................................... 12, 13, 14, 15

*Pope v. Sonatype, Inc.*,
No. 5:15-cv-00956-RMW, 2015 WL 2174033 (N.D. Cal. May 8, 2015) .............. 14

**Page(s)**

*Ramirez v. Cintas Corp.*,
    No. C-04-00281-JSW 2005 U.S. Dist. LEXIS 43531 (N.D. Cal. Nov. 2,
    2005)................................................................................................................... 14

*Randas v. YMCA of Metro. Los Angeles*,
    17 Cal. App. 4th 158 (1993) ............................................................................... 7

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004) ............................................................................. 10

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) ............................................................................................. 2

*Rodman v. Safeway Inc.*,
    No. 11-cv-03003- JST 2015 WL 604985 (N.D. Cal. Feb. 12, 2015)............................ 4, 10

*Ruhe v. Massimo Corp.*,
    No. SAC V-11-007340- CJC 2011 WL 4442790 (C.D. Cal. Sept. 16, 2011) ................. 14

*Spence v. United States*,
    629 F. Supp. 2d 1068 (E.D. Cal. 2009) ............................................................... 6

*Starke v. Gilt Groupe, Inc.*,
    No. 13 Civ. 5497 LLS, 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ...................... 4

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) ................................................................ 4

*Tompkins v. 23andMe, Inc.*,
    No. 5:13-CV-05682, 2014 WL 2903752 (N.D. Cal. June 25, 2014) ................................ 3

*Union Pac. R. Co. v. Cedar Rapids & Iowa City R. Co.*,
    477 F. Supp. 2d 980 (N.D. Iowa 2007) .............................................................. 12

*Universal Prot. Serv., L.P. v. Superior Ct.*,
    234 Cal. App. 4th 1128 (2015)....................................................................... 3, 13

*Uptown Drug Co., Inc. v. CVS Caremark Corp.*,
    962 F. Supp. 2d 1172 (N.D. Cal. 2013) ............................................................... 3

*Veeder v. NC Mach. Co.*,
    720 F. Supp. 847 (W.D. Wash. 1989) .................................................................. 7

*Windsor Mills, Inc. v. Collins & Aikman Corp.*,
    25 Cal. App. 3d 987 (1972)............................................................................... 11

*Zaltz v. JDATE*,
    952 F. Supp. 2d 439 (E.D.N.Y. 2013)................................................................. 8

*Zenelaj v. Handybook Inc.*,
    No. 14-CV-05449-TEH, 2015 WL 971320 (N.D. Cal. Mar. 3, 2015)........................ 2, 3

3428395

**Page(s)**

**Statutes**

Cal. Civ. Code § 1589 ................................................................................................ 11

1   **I.    INTRODUCTION**

2          Plaintiffs' insistence that they are not bound by the Arbitration Agreement contained in

3   Uber's Terms and Conditions ("Terms") cannot be reconciled with governing case law, Plaintiffs'

4   admissions, and the screenshots provided by both parties.  Plaintiffs do not deny that the Uber App

5   registration process contained a notice informing them that by creating an account they were

6   agreeing to Uber's Terms.  They also do not contend that this notice was unclear or that they did

7   not have an opportunity to view the Terms before completing their registration.  Instead,

8   Plaintiffs' argument reduces to a single proposition:  they did not see the notice.  This is irrelevant,

9   however, given that the notice was clearly visible at the final step of the registration process.

10  Uber's motion should be granted for the following reasons:

11         *First,* the arbitrator, rather than this Court, should decide all threshold questions of

12  arbitrability, including whether the parties agreed to arbitrate and whether the Arbitration

13  Agreement is conscionable.  The prevailing law rejects Plaintiffs' attempts to avoid this outcome.

14         *Second*, Plaintiffs Mena, Mejia, and Schreiber were all given clear and conspicuous notice

15  that they were agreeing to Uber's Terms when they created accounts using the Uber App.

16  Plaintiffs argue that they could not see the notice because, among other specious reasons, they

17  chose to dim the brightness on their phones.  However, Plaintiffs cannot avoid responsibility for

18  contractual provisions they do not like by arguing that their personal phone preferences somehow

19  release them from their contractual obligations.

20         *Third*, Plaintiff Coolidge is also bound by Uber's Terms.  Not only did he continue to use

21  Uber after receiving an email informing him that such use would constitute consent, but he

22  concedes that he has kept riding even after he filed his complaint.  Indeed, Coolidge has continued

23  to request rides *even after Uber filed this motion*.  Coolidge thus cannot dispute that he has used

24  Uber after repeatedly, and in many different ways, being placed on notice of its Terms.

25         *Fourth*, by alleging that Uber's statements regarding the Safe Rides Fee constituted an

26  offer which they implicitly accepted by using the Uber App, Plaintiffs cannot deny that their

27  acceptance also includes the Terms.  Plaintiffs cannot cherry pick only the contract terms that they

28  believe are favorable to them.

- 1 -

1    *Finally*, Plaintiffs failed to meet their burden of showing the Arbitration Agreement, which

2    is replete with pro-consumer provisions, is unconscionable.

3    **II.     THE ARBITRATOR SHOULD DECIDE ANY QUESTIONS OF ARBITRABILITY**

4        Uber's Terms provide that the arbitrator will decide all threshold questions of arbitrability.

5    Accordingly, the arbitrator, and not this Court, should determine whether Plaintiffs are bound by

6    the Arbitration Agreement.  Plaintiffs do not dispute that "parties can agree to arbitrate 'gateway'

7    questions of 'arbitrability,'" including the question of "whether the parties have agreed to

8    arbitrate."  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010).  Nor do they dispute

9    that Uber's Terms expressly incorporate AAA Rules, Dkt. No. 32-1 ("Cianfrani Decl., Ex. A")

10   at 8, which delegate threshold questions regarding "the existence, scope, or validity of the

11   arbitration agreement" to the arbitrator.  Mot. at 12.  Instead, Plaintiffs argue that incorporation of

12   AAA rules is not binding when one of the parties is a "consumer."  Opp. at 8.

13       Plaintiffs are wrong.  As Plaintiffs acknowledge, the Ninth Circuit recently held in *Oracle*

14   *America, Inc. v. Myriad Group A.G.* "that incorporation of [AAA] arbitration rules constitutes

15   clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  724 F.3d 1069,

16   1074 (9th Cir. 2013).  Despite this express language, Plaintiffs resort to a footnote in *Oracle*, in

17   which the Court "express[ed] no view as to the effect of incorporating arbitration rules into

18   consumer contracts."  724 F.3d at 1075 n.2.  Plaintiffs then argue that this means that the

19   incorporation principle should not be extended to cover unsophisticated parties.

20       Plaintiffs ignore the fact that "nearly every subsequent decision in the Northern District of

21   California[] . . . has consistently found [that incorporation constitutes] effective delegation of

22   arbitrability regardless of the sophistication of the parties."  *Zenelaj v. Handybook Inc.*, No. 14-

23   CV-05449-TEH, 2015 WL 971320, at *3 (N.D. Cal. Mar. 3, 2015) (listing cases).  This is true

24   even in the consumer context.  *See, e.g., Bernal v. Sw. & Pac. Specialty Fin.*, Inc., No. C 12-05797

25   SBA, 2014 WL 1868787, at *4 (N.D. Cal. May 7, 2014) (finding delegation in deposit loan

26   context); *see also Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) (finding delegation

27   in student loan context).  These decisions are in keeping with Federal Arbitration Act's (FAA)

28   "liberal federal policy favoring arbitration agreements," *Bernal*, 2014 WL 1868787, at *2

1   (citations omitted), as well as the "general contract principle[]" that "parties may incorporate by

2   reference into their contract the terms of some other document."  *Universal Prot. Serv., L.P. v.*

3   *Superior Ct.*, 234 Cal. App. 4th 1128, 1139-40 (2015).

4        Ignoring this authority, Plaintiffs cite to *Tompkins v. 23andMe, Inc.,* No. 5:13-CV-05682,

5   2014 WL 2903752 (N.D. Cal. June 25, 2014) and *Moody v. Metal Supermarket Franchising Am.*

6   *Inc.,* No. C 13-5098 PJH, 2014 WL 988811 (N.D. Cal. Mar. 10, 2015) for the contrary proposition

7   that incorporation is insufficient in the consumer context.[1]  However, as a more recent decision in

8   this district has recognized, "*Tompkins* and *Moody* . . . are . . . at odds with the prevailing trend of

9   case law." *Zenelaj*, 2015 WL 971320, at *5.  Indeed, Judge Koh, the author of *Tompkins*, recently

10  acknowledged that incorporation can evince an intention to delegate even when one of the parties

11  is unsophisticated.  *See Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-CV-04062-LHK,

12  2015 WL 1886882, at *9 (N.D. Cal. Apr. 24, 2015) (Koh, J.) (noting that "[plaintiff] does not

13  contest that the employment agreements' explicit incorporation of AAA rules serves as 'clear[ ]

14  and unmistakabl[e]' evidence of the parties' intent 'to delegate'") (internal citations omitted).

15       In summary, the Arbitration Agreement properly delegates to the arbitrator the duty to

16  decide threshold issues, and this Court should honor that delegation.

17  **III.   PLAINTIFFS ASSENTED TO THE ARBITRATION AGREEMENT**

18       If this Court were to decide the threshold question of whether Plaintiffs had agreed to

19  arbitrate, it is clear that they did.  Plaintiffs were each given "explicit textual notice that continued

20  use [of the Uber App would] act as a manifestation of the [their] intent to be bound." *Nguyen v.*

21  *Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).  Plaintiffs Mena, Mejia, and Schreiber

22  concede that at the final stage of the registration process they were presented with the following

23  notification:  "By creating an Uber account, you agree to the Terms & Conditions and Privacy

24  Policy." Mot. at 5.  Plaintiff Coolidge was likewise provided notice when he received an email

25

26       [1] Plaintiffs also cite to a footnote in this Court's opinion in *Uptown Drug Co., Inc. v. CVS*
    *Caremark Corp.* where the Court declined to find delegation based on incorporation of AAA
27  because "the Ninth Circuit has not addressed . . . the question."  962 F. Supp. 2d 1172, 1186 n.15
    (N.D. Cal. 2013) (Tigar, J.).  This case, however, was decided *before* the Ninth Circuit's opinion
28  in *Oracle*, which addressed this very issue in favor of delegation. 724 F.3d at 1074-75.

- 3 -

1   entitled "Agree to Terms & Conditions," which expressly informed him that he had to "review and

2   accept" Uber's terms "to keep riding." Dkt. No. 35 ("Lermitte Decl.") ¶ 3, Ex. A. Coolidge thus

3   cannot escape the fact that he has used Uber's services while on notice that his continued use

4   constituted consent. Indeed, Coolidge does not dispute that he kept riding after he filed his

5   complaint, Mot. at 9, and he has even continued to do so *after Uber filed this Motion*. Glad Decl.

6   ¶ 3. Accordingly, each Plaintiff is bound by Uber's Terms.

7          **A.      Plaintiffs Mena, Mejia, and Schreiber Had Inquiry Notice of the Terms**

8          As a threshold matter, Plaintiffs mischaracterize the Uber App registration process as an

9   unenforceable "browsewrap agreement." Opp. at 12. However, the attributes of the registration

10  process, not its label, control. *See Nguyen,* 763 F.3d at 1177 (adequacy of notice "depends on the

11  design and content of the website and the agreement's webpage"). Plaintiffs rely on this Court's

12  decision in *Rodman v. Safeway Inc.,* but fail to recognize that the requisite notice that was missing

13  in *Rodman* (and other cases like it) was present here; namely an express warning that completion

14  of the registration process "would be construed as a manifestation of assent to the agreement's

15  terms." No. 11-cv-03003- JST 2015 WL 604985, at *10 (N.D. Cal. Feb. 12, 2015) (Tigar, J).

16         Accordingly, courts routinely enforce agreements where the user is notified at the critical

17  moment just before completing the registration process that such completion constitutes consent,

18  as was the case here. *See, e.g., Nicosia v. Amazon.com, Inc.*, No. 14-CV4513, 2015 WL 500180,

19  at *5 (E.D.N.Y. Feb. 4, 2015) (consumer bound by contract terms when informed before

20  conclusion of ordering process that completion equaled consent); *Starke v. Gilt Groupe, Inc.*, No.

21  13 Civ. 5497 LLS, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (plaintiff bound by terms

22  and conditions where he was informed that, by clicking "Shop Now," "you agree to the Terms of

23  Membership"); *Crawford v. Beachbody*, *LLC*, No. 14-cv-1583, 2014 WL 6606563, at *3 (S.D.

24  Cal. Nov. 5, 2014) (customer bound by terms where website stated that "By clicking Place Order

25  below, you are agreeing" to the terms); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837-38

26  (S.D.N.Y. 2012) (account holder bound after being informed that completing registration equaled

27  consent); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 908, 911 (N.D. Cal. 2011)

28  (user was bound by online terms because she was told that, "By using [the service], you also agree

- 4 -

1   to the . . .Terms of Service.")[2]  As the screenshots from these cases reveal, the registration process

2   in each of these cases was nearly identical to Uber's.  Ashley Decl., Exs. A-E (screenshots).

3       Because Plaintiffs cannot deny that the requisite textual notice was present when they

4   completed their registration, they are forced to fall back on a litany of excuses (including their

5   personal phone preferences) as to why they could not see it.  None of these excuses is credible.

6           *1.     The color and font size of the notice did not prevent Plaintiffs from seeing it.*

7       Plaintiffs assert that they could not see the notice on the final registration screen because it

8   was written in gray font against a black background.  Opp. at 15.  However, this argument is

9   belied by the screenshots provided by both parties in which the notice is clearly visible, Mot. at 4-

10  5; Dkt. Nos. 37-1, 37-2, 37-4 (Plaintiffs' declarations) – not to mention the fact that Plaintiffs'

11  poor resolution screenshots are not as clear as what a user actually sees.[3]  It is these screenshots,

12  and not Plaintiffs' self-serving declarations, which are controlling.  *See Swift*, 805 F. Supp. 2d at

13  911 (rejecting argument that "grey fine print at the bottom of the page" was insufficient when

14  notice was "clearly visible" in screenshots).

15      Further, gray or white text against a black background is a standard display on

16  smartphones, as Plaintiffs' own exhibits demonstrate.  *See* Dkt. No. 38 ("Custis Decl."), Exs. A-B.

17  For example, Plaintiff Schreiber insists that he "always" dims the brightness on his phone to save

18  battery power. Schreiber Decl. ¶ 10.  But to do so he would have had to navigate a screen littered

19  with small grey text against a background.  Custis Decl., Ex. B.  Plaintiffs Mena and Mejia

20  likewise insist that they also "always" dim the brightness levels on their phones, but they too

21  would have had to navigate a screen with grey text on a grey background, which is even harder to

22

23

24      [2]  Plaintiffs argue that Uber has cited no authority dealing with smartphone applications
    specifically (while citing none of their own), but this is irrelevant.  Opp. at 15.  The medium
25  through which commerce is conducted does "not fundamentally change[] the principles of
    contract."  *Nguyen,* 763 F.3d at 1175.

26      [3]  *See* http://www.apple.com/ca/channel/iphone/iphone-4/tour/ (last accessed on May 26,
27  2015) ("The Retina display on iPhone 4" provides "pixel density . . . so high that the human eye is
    unable to distinguish individual pixels.");
28  http://www.forbes.com/sites/haydnshaughnessy/2013/04/28/samsungs-galaxy-s4-display-as-good-
    as-the-iphone/ (Samsung Galaxy 4 "now challenges the Retina display of the Apple").

- 5 -

1   read.  Mena Decl. ¶ 10; Mejia Decl. ¶ 10; Custis Decl., Ex. A.[4]

2          Plaintiffs also argue that the font size was too small.  Opp. at 16.   Yet in Plaintiffs' own

3   screenshots, the notice is clearly visible.  Further, the text of the notice is no smaller than the text

4   in the rest of the App sign-up process, which Plaintiffs were apparently able to complete without

5   difficulty.  It is also no smaller than the text Plaintiffs routinely have to navigate through to

6   decrease the brightness levels on their phones.  *See* Custis Decl., Exs. A-B.

7          While Plaintiffs rely on *Conservatorship of Link,* 158 Cal. App. 3d 138 (1984) for the

8   proposition that a notice written in anything less than 8pt font is per se unenforceable, California

9   courts have subsequently rejected this interpretation of *Link.  See Bennett v. United States Cycling*

10  *Fed'n*, 193 Cal. App. 3d 1485, 1489 (1987) ("We do not read *Link* as holding that every release

11  printed in less than eight-point type is unenforceable as a matter of law.").  Under *Bennett*, the key

12  issue was whether the notice was "so encumbered with other provisions as to be difficult to find."

13  *Id.*  That is not the case here where the notice was set off by itself and not accompanied by any

14  other text.  Further, courts in this Circuit have consistently recognized the sufficiency of notices

15  that were printed in 7pt font, the exact font size that Plaintiffs allege Uber used here.  Opp. at 16.

16  *See Spence v. United States*, 629 F. Supp. 2d 1068, 1080-81 (E.D. Cal. 2009) (enforcing notice

17  written in "7 point font" where the form was "simple and short"); *see also Harris v. Las Vegas*

18  *Sands L.L.C.*, No. CV 12-10858 DMG FFMX, 2013 WL 5291142, at *5 (C.D. Cal. Aug. 16,

19  2013) ("Seven point font is certainly readable . . . .").

20          *2.      Plaintiffs' personal decision to "always" turn down the brightness on their*

21                  *phones does not exempt them from being bound by the Terms.*

22          Plaintiffs argue that Uber's notice was hard for them to read because they always dim their

23  screen brightness settings.  But Uber has no control over Plaintiffs' personal brightness settings,

24  and Plaintiffs should not be setting them such that their screens are unreadable.

25

26          [4] Plaintiffs' own supporting literature also does not state that white or grey text on a black

27  background is illegible.  http://www.webdesignerdepot.com/2009/08/the-dos-and-donts-of-dark-web-design/ ("[A] large percentage of users say[] that dark website designs are tolerable and

28  sometimes even preferred,"); http://blog.tatham.oddie.com.au/2008/10/13/why-light-text-on-dark-background-is-a-bad-idea/ ("I use a black background on my Windows Phone.").

1    Courts in both California and this Circuit have rejected similar challenges to the adequacy

2   of notice where claimed deficiencies were beyond the defendant's control.  For example, courts

3   have held that parties are bound by contracts that they have agreed to even when the party was

4   illiterate, *Randas v. YMCA of Metro. Los Angeles*, 17 Cal. App. 4th 158, 163 (1993) (an illiterate

5   party "should have [the agreement] read or explained to [her]" before signing), the agreement was

6   not written in the party's native language, *Mohebbi v. Khazen,* No. 13-CV-03044-BLF, 2014 WL

7   6845477, at *5 (N.D. Cal. Dec. 4, 2014) ("Plaintiff's inability to read English does not render the

8   terms of the arbitration agreement invalid."), and the party suffered from poor vision, *Veeder v.*

9   *NC Mach. Co.*, 720 F. Supp. 847, 852 (W.D. Wash. 1989) (plaintiff was bound by agreement

10  where "[h]e did not volunteer that he could not read without his glasses when he signed").  As

11  these cases make clear, when the offeror has no way of knowing that the offeree's personal

12  circumstances render him unable to read the agreement, the onus is on the offeree to make sure

13  that he understands what he is agreeing to.  And unlike these cases, Plaintiffs are not illiterate, can

14  speak English, and do not suffer from poor vision.  They simply made a personal decision to alter

15  their phone settings, which does not free them from their contractual obligations.

16    Even accepting as true that Plaintiffs "always" dim their phones, Plaintiffs should have

17  turned up the brightness on their phones if they could not see clearly.  Based on Plaintiffs' own

18  screen shots, it is readily apparent that there is additional text on the final registration page,[5] and

19  Plaintiffs' own exhibits recommend against decreasing brightness such that it compromises

20  visibility.  *See* Custis Decl., Ex. C at 2-3 (recommending that users set a "brightness level that is

21  still *comfortable*, and then just *bump it up when necessary*") (emphasis added).  To allow Plaintiffs

22  to nullify a contract under these circumstances would reward Plaintiffs' own careless behavior.

23         *3.      The placement of the Terms was conspicuous.*

24    Plaintiffs also take issue with the placement of the notice on the final "Link Payment"

25  screen, Opp. at 16-17, but, again, the screenshots provided by Uber and Plaintiffs demonstrate that

26

27         [5] Even with the brightness turned down, the notice is easily visible on all of Plaintiffs'
    screen shots except for those in the Mejia Declaration, which are artificially grainy and faded.  *See*

28  Mejia Decl. ¶ 10.

the notice was clear.  The final step of the registration process appears on a single screen, and users are not required to scroll down to view the notice.  *See, e.g., Zaltz v. JDATE*, 952 F. Supp. 2d 439, 453 (E.D.N.Y. 2013) (enforcing a terms of service agreement where "Plaintiff did not need to scroll or change screens in order to be advised of the Terms and Conditions; the existence of, and need to accept and consent to, the Terms and Conditions of Service was readily visible").  Further, the notice is the only text that appears on the bottom of the screen.  It is not "buried . . . among many other links," forcing the user to go searching for it.  *See In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012).  Indeed, for Plaintiff Mena, the notice was directly below the sign-up field.  Mot. at 5.

Plaintiffs take particular issue with the sign-up process completed by Plaintiff Schreiber, arguing that the notice is "placed at the *far* bottom of the screen."  Opp. at 17 (emphasis added). Yet elsewhere Plaintiffs emphasize that the screen size of smartphones are small, ranging from "3.5 to 5 inches," Opp. at 3, 15, meaning the link to the Terms was at most an inch or two away and thus well within Plaintiffs' line of vision.  Plaintiffs also object that the notice is temporarily obscured once the user begins to fill out his or her payment information.  But this is irrelevant. The notice is clearly visible *before* the user decides to click on one of the payment options to complete the registration process.  At that point, the user has already committed to creating an Uber account and has thereby agreed to abide by Uber's Terms.

Finally, Plaintiffs argue that the notice was ineffective because it only appears on the last page of the registration process, citing *Cairo, Inc. v. Crossmedia Servs., Inc.*, No. C 04-04825, 2005 WL 756610, at *4-5 (N.D. Cal. Apr. 1, 2005).  Opp. at 16-17.  But *Cairo* held only that notice on every single page of the registration process was sufficient, not necessary.  *See id.* Plaintiffs also fail to note that this last page constitutes the critical moment right before the user clicks "Done" or "Save" to complete the sign-up process.  *See* Mot. at 4-5.  The presence of the notice at this stage makes it clear to the registrant that completion of the sign-up process constitutes consent to the terms.  Accordingly, as noted on pp. 4-5, *supra*, courts in this Circuit and throughout the nation have held that notice was sufficient when it was provided just before the user completed his or her registration.  *See* Ashley Decl., Exs. A-E (screenshots).

- 8 -

4.      *Uber's Terms are easily readable on a smartphone*.

Plaintiffs also complain that, if a user clicked on the hyperlink to Uber's Terms, they are too impracticable to read on a smartphone.  Opp. at 17-18.  However, Plaintiffs fail to explain why this would be so.  Notably, users are given no time limit to read the terms, which were just over 8 pages long.  Cianfrani Decl., Ex. A.  *See, e.g.*, *Novak v. Overture Servs., Inc.*, 309 F. Supp. 2d 446, 451 (E.D.N.Y. 2004) (enforcing forum selection clause where "no time limitation limited Plaintiff's opportunity to scroll through the terms "); *Cover Four, L.L.C. v. Cardiac Sci. Corp.*, No. 3:07-CV-661-M, 2007 WL 4245486, at *6 (N.D. Tex. Dec. 3, 2007) (enforcing arbitration agreement "contained in a contract only nine pages long [and] Plaintiff was apparently given substantial time to review").  Further, for users who want to see the terms in larger print, they can use their smartphone's zoom feature to enlarge text.[6]  Regardless, Uber's terms are at least as easy to read on a smartphone as a contract printed "in fine print on the back of [a cruise] ticket."  *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 597 (1991) (Stevens, J., dissenting).

5.      *The fact that Uber could have given even more notice is irrelevant*.

Finally, Plaintiffs insist that Uber could have done more to put users on notice of the Terms, specifically by requiring them to click a box that says "I agree" or a "checkbox" acknowledging their assent to the Terms.  Opp. at 22.  This argument effectively amounts to the proposition that only actual knowledge of an agreement can establish consent.  This is not the law.  As the Ninth Circuit has stated, notice is sufficient if it would "put[] a reasonably prudent user on *inquiry notice* of the terms of the contract."  *Nguyen*, 763 F.3d at 1177 (emphasis added).

Of course, it is always possible to design an app or website registration process to provide even more notice.  However, "[t]hat defendants could have done more to make the [disclosure] conspicuous . . . does not mean that the existing disclosure . . . [was] insufficiently conspicuous."  *Harper v. Lindsay Chevrolet Oldsmobile, LLC*, 212 F. Supp. 2d 582, 589 n.19 (E.D. Va. 2002).  Uber was only required to make a "reasonably prudent user" – not the least discerning one, or the

---

[6] https://www.apple.com/accessibility/ios/ (last accessed on May 26, 2015) ("Zoom is a built-in magnifier . . . And it works with all apps from the App Store.");
https://support.google.com/accessibility/android/answer/6006949?hl=en (last access on May 26, 2015) ("Magnification gestures enable you to temporarily magnify what's on your screen.").

Defendant's Reply ISO Motion To Stay Pending Arbitration
Case No. 3:15-cv-00064-JST

ones who have idiosyncratic phone practices – aware of the Terms.  *Nguyen*, 763 F.3d at 1177. The notice it provided easily meets this standard.  *See* pp. 4-5, *supra;* Ashley Decl., Exs. A-E.

### B.    Plaintiff Coolidge Used Uber After Being Placed On Notice of Uber's Terms

Plaintiff Coolidge has been placed on notice of the Terms in multiple ways.  As an initial matter, Coolidge cannot deny that he was aware of Uber's Terms when he filed his lawsuit, FAC ¶ 84, and he certainly cannot deny that he was aware of them after Uber filed this Motion, Dkt. No. 37-3 ("Coolidge Decl.") ¶ 4.  Thus, at this point, Coolidge is at least on inquiry notice of Uber's Terms, which unequivocally state:  "Your access and use of the Services constitutes your agreement to be bound by these Terms."  Cianfrani Decl., Ex. B.  Nonetheless, Coolidge tacitly concedes that he continued to request rides through Uber *after filing his complaint.*  Mot. at 9. What's more, he has taken three additional rides *after Uber filed its arbitration motion.*  Glad Decl. ¶ 3.  This constitutes an independent reason why Coolidge is bound by the Arbitration Agreement.  *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 402 (2d Cir. 2004) (plaintiffs' repeated use of defendant's services after being put on notice of terms constituted assent).

Further, Coolidge was also put on notice of the Arbitration Agreement when Uber sent him an email notifying him of its Terms on October 29, 2014.[7]  Much like his fellow Plaintiffs, however, Coolidge offers a series of meritless excuses as to why he did not read it.

*First*, Coolidge asserts that "[m]any consumers . . . make a deliberate decision not to open and review each and every email" they receive "from businesses."  Opp. at 20.  However, this Court has previously recognized that a company may effectively notify consumers of a terms and conditions agreement by sending them an email.  *Rodman*, 2015 WL 604985, at *11.[8]  Further,

---

[7] Plaintiffs half-heartedly suggest that Uber's argument constitutes a Rule 11 violation without satisfying any of Rule 11's requirements.  Plaintiffs have it exactly backwards.  If anything, Coolidge's argument that he was unaware of Uber's Terms is frivolous in light of the fact that he has continued to request rides with the Uber App repeatedly after the complaint and this Motion were filed.

[8] Plaintiffs argue that *Rodman* and the other cases cited by Uber are inapposite because they dealt with amendments to terms that the parties had already agreed to.  Opp. at 19.  Plaintiffs' characterization is inaccurate.  *Dollar Phone Corp. v. Dun & Bradstreet Corp.* dealt with terms that plaintiffs received after they had placed an order with the defendants.  936 F. Supp. 2d 209, 215 (E.D.N.Y. 2013).  Further, Plaintiffs themselves state that email is not only an effective way of communicating terms and condition agreements, it is preferable for smartphone users.  Opp. at 18.

- 10 -

1  Plaintiffs undermine their own argument when they state elsewhere that Uber should have

2  "provid[ed] consumers with the ability to have a copy of the Terms of Service sent to their email."

3  Opp. at 22.  Plaintiffs' own argument thus assumes that consumers read their email.

4        **Second**, Coolidge argues that the email's "contractual nature [was] not obvious."  Opp. at

5  20 (quoting *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (1972)).

6  Actually, the email's subject line was "Agree to Terms & Conditions."  Lermitte Decl. ¶ 3.  Thus,

7  whether opening it or not, Coolidge could tell that the email contained contractual terms that

8  related to his decision, many times over, to use Uber.  In contrast, *Windsor* involved a form titled

9  merely "Acknowledgement of Order."  25 Cal. App. 3d 987 at 989-90.

10        **Third**, Coolidge characterizes the October 29, 2014 email as a "clickwrap" agreement that

11  he never clicked to accept.  Opp. at 18.  Again, this label is immaterial.  The salient question is

12  whether Coolidge was on "inquiry notice" that his "continued use" of the Uber App would "act as

13  a manifestation of the [his] intent to be bound."  *Nguyen*, 763 F.3d at 1177.  The email satisfied

14  this standard, as it notified Coolidge that he had to "click" to accept the terms "to keep riding."

15  Lermitte Decl., Ex. A.  Even if Coolidge did not ultimately click on the button provided in the

16  email, his acceptance of the benefits of the contract (the continued use of the Uber App) was

17  sufficient to bind him.  Cal. Civ. Code § 1589.  Just as a party may accept a written agreement

18  without signing, a party may accept a clickwrap or browsewrap agreement without clicking.  *See*

19  *Performance Plastering v. Richmond Am. Homes*, 153 Cal. App. 4th 659, 668 (2007) ("[T]he lack

20  of a party's signature does not make a fully executed contract unenforceable.").

21        In summary, Coolidge was on inquiry notice of the Terms, and his repeated riding with

22  Uber (even after the complaint and this motion) means that he is bound by those Terms.

23  **IV.**    **PLAINTIFFS ARE BOUND BY THE ARBITRATION AGREEMENT UNDER**

24          **THEIR OWN IMPLIED CONTRACT THEORY**

25        Plaintiffs' allege that Uber is contractually bound by representations it made about the

26  "Safe Rides Fee" (FAC ¶¶ 107-134), claiming the representations constituted an offer that they

27  accepted when they used the Uber App.  *See, e.g,* FAC ¶ 111 ("Plaintiff and other Class members

28  accepted Defendant's offer by paying the Safe Rides.").  But Plaintiffs cannot have it both ways.

- 11 -

1   If Uber's representations regarding the Safe Rides Fee constituted an offer that Plaintiffs could

2   implicitly accept by using the App, then so too did Uber's representations regarding its Terms.

3          Critically, both Uber's Terms and information regarding the Safe Rides Fee were made

4   accessible to Plaintiffs in the exact same manner:  via a clickable hyperlink.  FAC ¶¶ 32-33.

5   Plaintiffs seek to enforce the latter while disavowing the fromer.  However, a party cannot "cherry

6   pick terms of an express agreement that it likes . . . and disregard other terms that it does not like"

7   under an "implied or quasi contract theory."  *Union Pac. R. Co. v. Cedar Rapids & Iowa City R.*

8   *Co.*, 477 F. Supp. 2d 980, 1002 (N.D. Iowa 2007).

9   **V.      THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE**

10         The Arbitration Agreement provides significant safeguards to riders:  1) arbitration occurs

11  where the rider resides; 2) Uber pays all arbitration fees for any claims under $75,000; 3) riders

12  can obtain attorneys' fees, whereas Uber waives them; and 4) for claims under $10,000, riders

13  control whether there is a hearing or instead arbitration is decided on the papers.  Cianfrani Decl.,

14  Ex. A at 8.  In their unconsionability argument, Plaintiffs do not say a word about these rider-

15  favorable arbitration provisions.  Nor do they even mention the landmark Supreme Court case,

16  *AT&T v. Concepcion,* which warned against applying state unconscionability law in a way that

17  would "disproportionate[ly] impact" arbitration clauses.  131 S. Ct. 1740, 1747 (2011).

18         Plaintiffs' unconscionability arguments mirror those of the plaintiffs in the related case,

19  *Philliben v. Uber* (Case 4:14-cv-05615).  Uber has moved to stay that action in favor of arbitration

20  on the same grounds raised in this motion, and the assertions of unconscionability and case law at

21  issue in both motions overlap significantly.  Consequently, to avoid redundancy, Uber does not

22  repeat each argument set forth in *Philliben,* but instead incorporates herein by reference its reply

23  argument on unconscionability in that case, at Dkt. No. 38 at pp. 7-15.[9]  Below, Uber highlights

24  the main deficiencies in each of Plaintiffs' unconscionability arguments (with additional detail and

25

26         [9] Plaintiffs reference Massachusetts and Illinois law.  Opp. at 23.  To the extent that
    Plaintiffs argue a different standard applies in Illinois, this is belied by the analysis performed in
27  both Illinois cases they cite, which evaluated procedural and substantive unconscionability.  *See
    Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 22-45 (2006) (discussing procedural and
28  substantive unconscionability and then holding that a class action waiver was unconscionable);
    *Crown Mortg. Co. v. Young*, 371 Ill. Dec. 31, 34-35 (Ill. Ct. App. 2013) (discussing both).

case discussion on the deficiencies set forth in the *Philliben* reply brief) and also addresses the arguments and case law that are unique to these Plaintiffs.

### A.   The Arbitration Agreement Is Not Procedurally Unconscionable

Plaintiffs' principal procedural unconscionability argument is that the Terms are "adhesive," but as the Supreme Court recently noted, "*the times in which consumer contracts were anything other than adhesive are long past*." *Concepcion*, 131 S. Ct. at 1750 (emphasis added). Moreover, Plaintiffs' proffered authority mostly involves *employment* contracts, which present a far different situation than this case.  Although Uber provides a desirable service to its customers, Plaintiffs are not employees of Uber, and Uber is a consumer non-essential good.  *See McCabe v. Dell, Inc.*, No. CV 06-7811-RGK, 2007 WL 1434972, at *3 (C.D. Cal. Apr. 12, 2007) (recognizing a difference between employment agreements and agreements concerning a "consumer non-essential good").  In addition, Plaintiffs' own proffered authority holds that, even in the context of an adhesive employment contract, the "degree of unconsionability is minimal." *Lou v. MA Labs.*, No. C. 12-05409-WHA 2013 WL 2156316, *2 (N.D. Cal. May 17, 2013).

Unlike the plaintiffs in *Philliben,* Plaintiffs here claim that, even though the Arbitration Agreement explicitly identifies that the AAA Rules govern and supplies a hyperlink to the AAA's webpage, it was unconscionable not to attach the rules to the Terms. Opp. at 24.  But it is a "general contract principle" that "parties may incorporate by reference into their contract the terms of some other document." *Universal Prot.*, 234 Cal. App. 4th at 1139-40.  Moreover, Plaintiffs' cases are inapposite.  In *Lou v. Ma Labs.*, the referenced JAMS arbitration rules required an award of costs and fees if they were not borne equally by the parties.  2013 WL 2156316, at *3 (N.D. Cal. May17, 2013).  This made the agreement's representation that the employer would "advance all fees" misleading.  *Id.*  In *Harper v. Ultimo*, failure to attach the Better Business Bureau arbitration rules was found unconscionable because these rules precluded relief for "tort damages, punitive damages, or any other damages otherwise appropriate in a court of law."  113 Cal. App. 4th 1402, 1405 (2003).  This is irrelevant to the situation here, where the Limitation of Liability (which is unchallenged by these Plaintiffs) is clearly set forth in the Terms.  Cianfrani Decl., Ex. A at 6.

- 13 -

**B.    The Arbitration Agreement Is Not Substantively Unconscionable**

As in *Philliben*, Plaintiffs argue that the Arbitration Agreement is substantively

unconscionable because it (i) contains a carve-out for injunctive and equitable relief to protect

intellectual property, and (ii) provides Uber a right to modify the Terms.[10]  Both assertions fail.

***Intellectual Property Injunction Carve-Out***.  As demonstrated at *Philliben,* Dkt. No. 38, at

12-13, the Arbitration Agreement contains mutual carve-outs from arbitration for small claims

actions and claims for injunctive/equitable relief to enforce intellectual property rights.  Plaintiffs

ignore the small claims carve-out and then argue that the carve-out for injunctive/equitable relief

to protect intellectual property is unconscionable.  Opp. at 24.  In support, Plaintiffs cite *Fitz v.

NCR,* 118 Cal. App. 4th 702, 724 (2004).  However, the carve-out in *Fitz* was for all intellectual

property claims (not just injunctive and equitable relief claims).  *Id.* at 709.  Moreover, as courts in

this District have recognized, when there are "reasonable business realities that justify excluding

claims for declaratory and injunctive relief from arbitration," an arbitration clause "contains the

necessary modicum of bilaterality and is not substantively unconscionable on this basis."  *Ramirez

v. Cintas Corp.*, No. C-04-00281-JSW 2005 U.S. Dist. LEXIS 43531, *24 (N.D. Cal. Nov. 2,

2005).  This is true when, as with Uber, those business realities involve "confidential and

proprietary information, trade secrets and non-competition agreements."  *Id.* at *23-24 (holding

that the employer's carve-out of those issues are not substantively unconscionable); *Pope v.

Sonatype, Inc.*, No. 5:15-cv-00956-RMW, 2015 WL 2174033, at *5 (N.D. Cal. May 8, 2015)

(enforcing arbitration agreement despite presence of trade secret and confidential information

mutual carve out); *see also Ruhe v. Massimo Corp.,* No. SAC V-11-007340- CJC 2011 WL

4442790, *4 (C.D. Cal. Sept. 16, 2011) (provision excepting intellectual property rights claims did

not "shock the conscience" of the court); *McCabe v. Dell, Inc.*, No. CV 06-7811-RGK, 2007 WL

1434972, at *3 (C.D. Cal. Apr. 12, 2007) (finding "reasonable justification for the unilateral

arbitration provision" where the agreement "pertains to a consumer non-essential good").

---

[10] Unlike *Philliben,* Plaintiffs here do *not* contend that the limitation of liability clause is substantively unconscionable.  Indeed, Plaintiffs dropped this assertion from their First Amended Complaint.  *Compare* Complaint, Dkt. No. 1 at ¶¶ 66-80 with FAC, Dkt. No.28 (no allegations of unconscionability).

1    ***Right To Modify***.  As demonstrated in Uber's reply brief in *Philliben*, Dkt. No. 38 at p. 11,

2    Plaintiffs' contention regarding Uber's right to modify the Terms has been repeatedly rejected,

3    both by this Court as well as by numerous California courts, which hold that such provisions are

4    enforceable because they are subject to the implied covenant of good faith and fair dealing.  *See*

5    *id.* (citing *McIntosh v. Adventist*, *Goff v. G2 Secure Staff*, *Casas v. Carmax*, and *Serpa v.*

6    *California Sur. Investigations*).  Moreover, the authority Plaintiffs cite in support of their

7    argument relies on employment law presumptions inappropriate to this case (and likely

8    irreconcilable with *Concepcion* as well).  *See, e.g.*, *Macias v. Excel Bldg. Servs.*, 767 F. Supp. 2d

9    1002, 1009 (N.D. Cal. 2011) (decided pre-*Concepcion*, and stating:  "Under California law, a

10   contract to arbitrate between an employer and an employee raises a rebuttable presumption of

11   substantive unconsionability.").  Moreover, these cases all involve extreme circumstances simply

12   not extant here.  *See, e.g., Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922-24 (9th Cir. 2013)

13   (employee was forced to agree prior to receiving contract terms; arbitrator selection process was

14   rigged in favor of company's choice; and employee had to share in arbitrator fees of thousands of

15   dollars per day).  Indeed, even if these employment cases were somehow relevant here, the very

16   safeguard that Plaintiffs' cases lack, Uber's Arbitration Agreement has.

17       ***Severance.***  Unlike in *Philliben,* Plaintiffs here do not contend that the alleged

18   "unconscionable" provisions cannot be severed from the contract.  Thus, even if any clause was

19   improper, severance – not wholesale voiding of the Arbitration Agreement – would be the

20   appropriate remedy.  "In California, severance is preferred over voiding the entire agreement.  The

21   United States Supreme Court has an even stronger preference for severance in the context of

22   arbitration agreements."  *See, e.g., Newton v. American Debt Services*, 549 Fed. Appx. 692, 695-

23   697 (9th Cir. 2013) (internal citations and quotation marks omitted); *see also Philliben,* Dkt. No.

24   38, at pp. 14-15.

25       For all of these reasons, Plaintiffs' unconscionability arguments fail.

26   **VI.    CONCLUSION**

27       Plaintiffs had clear notice of the Arbitration Agreement, which is eminently fair.  For the

28   reasons set forth above, the Court should grant Uber's Motion.

1

Dated:  May 26, 2015

IRELL & MANELLA LLP
Andra Barmash Greene
A. Matthew Ashley

2

3

4

By:  /s/ A. Matthew Ashley

5

A. Matthew Ashley

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 16 -

1

**ECF ATTESTATION**

2          I, Michael Harbour, am the ECF user whose ID and password are being used to file

3  **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STAY PROCEEDINGS**

4  **PENDING ARBITRATION**.  I hereby attest that I received authorization to insert the signatures

5  indicated by a conformed signature (/s/) within this e-filed document.

6                                        By:     /s/  Michael Harbour

7                                                Michael Harbour

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -
